UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MORRIS WEATHERSPOON #471817,          Case No.   2:17-cv-40

    Plaintiff,                              Hon. Gordon J. Quist
                                            U.S. District Judge
v.

CAROL WILLIAMS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

### Introduction

This is a civil rights action brought by state prisoner Morris Weatherspoon pursuant to 42 U.S.C. § 1983. Weatherspoon alleges that he received inadequate medical care while he was confined at the Kinross Correctional Facility between October 2012 and January 2013. In addition, Weatherspoon alleges that he was subjected to unconstitutional retaliation when false information was placed in his Security Classification Committee (SCC) review and when he received two misconduct tickets.

After initial review of the complaint, the remaining Defendants are Nurse Williams, Sgt. Schwesinger, Asst. Resident Unit Manager (ARUM) Dicken, Sgt. Johnson, Correctional Officer (CO) Mastaw, CO Beaudion, Capt. Raffaele, ARUM Marlette, Deputy Warden Olson, Dr. Simons, Dental Hygienist Franckowlak, and Nurse Practitioner Rogers.[1] (ECF Nos. 4 and 5.)

---

[1]     Defendants Marlette, Simons, Franckowiak, Schwesinger, and Dicken have not been served with a summons and complaint. A failure to serve a defendant

The remaining Defendants filed motions for summary judgement. (ECF Nos. 76 and 77.) I respectfully recommend that the Court grant the motions for summary judgment and dismiss the case.

### Plaintiff's Allegations

Weatherspoon seeks compensatory and punitive damages against Defendants for the failure to provide him with medical care and for retaliation. Weatherspoon alleges that on October 15 and 26, 2012, he was denied dental care and pain medication. Weatherspoon claims that Defendants Beaudion and Mastaw set him up for false misconduct tickets. He says that, on December 10, 2012, Defendants Dicken, Olson, and Marlette falsified the record in Weatherspoon's SCC review by stating that Weatherspoon was in fear for his safety from staff due to racial issues, but that there was no proof that Weatherspoon had been threatened. Weatherspoon states that he had actually requested protection because he was afraid that he would be attacked by other inmates.

Weatherspoon also says that, following an interview associated with the SCC review, Defendant Beaudion set Weatherspoon up on a gambling misconduct. On December 11, 2012, Defendant Johnson reviewed Weatherspoon on the misconduct ticket. Weatherspoon says that two days later, on December 13, 2012, Defendant Raffaele ignored Weatherspoon's complaints regarding the inaccuracies in the ticket written by Defendant Beaudion. Weatherspoon claims that his confinement in

---

within 90 days after the filing of a complaint requires dismissal without prejudice of the unserved defendants, absent good cause. Fed. R. Civ. P. 4(3)(m).

administrative segregation prevented him from seeking treatment for serious medical conditions. Weatherspoon says that when he asked Defendant Raffaele to destroy the misconduct report, Defendant Raffaele became threatening and caused Weatherspoon to fear for his life. Weatherspoon says that he was unable to sleep for two days.

Weatherspoon alleges that between December 8, 2012, and January 3, 2013, Defendants Williams and Rogers denied Weatherspoon prescribed pain medication, as well as other treatment for a tumor in Weatherspoon's femur and for his dental problems. Finally, Weatherspoon claims that, in November of 2013, he had "encounters" with Defendant Olson on two occasions, during which Weatherspoon complained of harassment, retaliatory cell searches, and threats of misconduct reports.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits,

and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Eighth Amendment Deliberate Indifference

Defendants move for summary judgment based upon the medical record establishing that Weatherspoon received appropriate medical care and that each Defendant was not deliberately indifferent to his serious medical needs. Weatherspoon disagrees with this assessment of the medical care and treatment that he received.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is

incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be

> repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

"Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The records in this case show that Defendant Nurse Practitioner (NP) Rogers evaluated Weatherspoon on October 2, 2012. (ECF No. 78-2, PageID.887-889.) Weatherspoon complained about a burning pain sensation in his leg while jogging and sleeping. Defendant Rogers noted that a previous x-ray revealed a "focal elevation of distal anterior cortex" due to prior trauma in the area. (*Id.* at PageID.887.) Weatherspoon had continued to jog even though a doctor had advised to refrain from jogging. (*Id.*) Defendant Rogers advised Weatherspoon to walk for exercise and to avoid running when his knee was irritated. Defendant Rogers ordered a follow-up x-ray. (*Id.* at PageID.888.)

The records also show that, a week later, on October 9, 2012, Weatherspoon was examined by R.N. Janice Postma for a boil on his gum. On October 11, 2012, R.N. Cynthia M. Jenkins responded to Weatherspoon's request to see a doctor and for a bottom bunk detail. (*Id.* at PageID.892.) R.N. Jenkins explained that Weatherspoon was already evaluated for this complaint on October 2, 2012 and a

bottom bunk detail was not ordered. Instead, Weatherspoon was instructed to purchase analgesic medication from the prison store.

On October 18, 2012, Weatherspoon's Motrin prescription was refilled. (*Id.* at PageID.893.) On November 14, 2012, Weatherspoon was examined by R.N. Mathew Sizer for left lateral quadricep pain. Weatherspoon requested a bottom bunk, a cane, and pain medication. (*Id.* at PageID.896.) The records indicate that Weatherspoon had full range of motion in his left leg, knee, and hip, and could sit and rise without difficulty. (*Id.*) R.N. Sizer ordered prescription Motrin and instructed Weatherspoon to purchase over-the-counter Motrin until the prescription was filled, to rest, and to walk for exercise. (*Id.* at PageID.897.) It was also noted that an x-ray of Weatherspoon's left knee had been previously scheduled. (*Id.*)

The November 19, 2012, x-ray revealed no changes from Weatherspoon's previous x-ray. (*Id.* at PageID.899.) The x-ray showed an elevation of the bone cortex of the distal femur anteriorly. (*Id.*) This was evidence of an old healed trauma. (*Id.*) No other abnormalities were noted. (*Id.*)

On December 7, 2012, Dr. Charles Simons, D.D.S., provided dental care and ordered a "mechanical soft diet" for Weatherspoon. (*Id.* at PageID.903.)

On December 11, 2012, Weatherspoon complained that his leg hurt, that he needed pain medication and that he was being treated inappropriately by medical staff. (*Id.* at PageID.905.) Weatherspoon was advised that he had an appointment scheduled with a medical provider and to purchase over-the-counter pain medication from the prison store. (*Id.*)

On January 2, 2013, Weatherspoon was examined by Defendant Rogers. (*Id.* at PageID.908.) Weatherspoon had been told not to run on his leg and stated that after walking two laps on the track he would have to stop due to the pain. (*Id.* at PageID.909.) During the examination, Weatherspoon was in no apparent pain and Defendant Rogers noted that he did not meet the qualifications for a bottom bunk. Defendant Rogers reviewed past x-rays and reports, but Weatherspoon was mostly concerned with the names of the doctors and health care employees who had provided him with treatment. (*Id.* at 910.) Defendant Rogers recommended that Weatherspoon stop activities, ordered a 30-day supply of prescription Motrin, and noted that pain relief medication may be purchased from the prison store. (*Id.*) Defendant Rogers referred Weatherspoon to a physician for further examination since there existed no evidence of malignancy, or pain during examination. (*Id.* and ECF No. 7-6, PageID.750.) Weatherspoon transferred from KCF the next day.

In the opinion of the undersigned, Weatherspoon has failed to show that any Defendant acted with deliberate indifference to his serious medical or dental needs. Weatherspoon was treated for complaints of leg pain with pain medication and he received an x-ray that revealed no abnormalities. Each time Weatherspoon complained about leg pain, he was told to rest and to either take prescribed pain medication or to purchase pain medication from the prison store. Weatherspoon received treatment for his complaints of leg pain. He was examined and evaluated several times. He was given an x-ray, which revealed no change from a previous x-ray. Weatherspoon was treated with pain medication and instructed to rest his leg.

Weatherspoon disagrees with his treatment. From an objective point of view, Weatherspoon has failed to place verifying medical evidence in the record to establish a detrimental effect from the treatment that he received. From a subjective point of view, Weatherspoon has failed to allege acts or omissions sufficiently harmful to evidence deliberate indifference to a serious medical need. In the opinion of the undersigned, it is respectfully recommended that Weatherspoon's Eighth Amendment claims be dismissed.[2]

### Retaliation

Weatherspoon makes several claims of retaliatory conduct. In order to set forth a First Amendment retaliation claim, a plaintiff must establish: (1) that he was engaged in protected conduct; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff must be able to

---

[2] Weatherspoon asserts that summary judgment should be denied because he was unable to fully engage in discovery. Weatherspoon had the opportunity to engage in discovery and the discovery period has ended. In addition, Weatherspoon claims a cover-up and that he has chronic conditions such as pain, mental distress, and discomfort from side effects of controlled substance abuse including antipsychotic drugs that were forced into his body against his consent. Weatherspoon alleges that he has received no treatment for Parkinson, Tardive Dyskinesia, Dystonia, Tardive akathisia, akinesia, and other unbearable pain, including permanent neurological brain damage, P.T.S.D., blurred vision, and involuntary muscle movement. Weatherspoon claims mental illness from sexual abuse, harassment, and physical assault from an undocumented immigrant and security threat group inmates of various known gangs who all retaliate against him due to his grievance filings. (ECF No. 88, PageID.1031.) Weatherspoon has not supported any of these allegations with factual evidence in the record.

prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

**1. Security Classification Committee Review**

Weatherspoon alleges that Defendant Olson falsified information considered during an SCC Review by reporting that Weatherspoon was fearful of staff due to racial issues and that there existed no proof of threats. Weatherspoon argues that this was a false statement and that he feared for his safety because of other inmates. Weatherspoon asserts that this false information was placed in his SCC Review in retaliation. In the opinion of the undersigned, Weatherspoon has failed to present any evidence that shows that Defendant Olson took any action because Weatherspoon had engaged in past protected conduct. Weatherspoon has submitted no evidence that Defendant Olson intentionally placed false information in his SCC Review or that she placed any information in his SCC Review because he had engaged in past protective conduct. In the opinion of the undersigned, Weatherspoon has failed to support his retaliation claim against Defendant Olson.

**2. Misconduct Reports**

Weatherspoon asserts that he received a misconduct ticket for gambling on December 8, 2012, after Defendant Beaudoin found Weatherspoon holding a betting slip in his hand. At his hearing, Weatherspoon claimed that he was not the one with

the gambling slips. The hearing officer found Weatherspoon guilty of the charge. The hearing report is shown below.

> **HEARING REPORT (Do Not Complete If Hearing Waived)**
> Evidence and/or prisoner statement in addition to misconduct report: prisoner present for hearing and the misconduct is read. prisoner states this was not him with the gambling slips.
>
> Reasons for findings: I find the officer observed the prisoner open his hand and give him the gambling slip. charge is upheld

(ECF No. 78-3, PageID.917.)

Weatherspoon has presented no evidence to support his claim that Defendant Beaudoin issued him this misconduct ticket for any reason other than the fact that he was holding a gambling slip in his hand. There exists no evidence to support Weatherspoon's claim that Defendant Beaudoin issued this ticket in retaliation for a grievance filing.

Similarly, Weatherspoon asserts that he received a retaliatory misconduct ticket from Defendant Mastaw on December 10, 2012, when Weatherspoon refused a direct order to return to general population. The charge was upheld because the order was reasonable and was refused by Weatherspoon. The hearing report is shown below.



(*Id.* at PageID.915.)

There exists no evidence of retaliatory conduct by Defendant Mastaw. Weatherspoon was given a direct order to return to general population and refused that order. As a result, he was found guilty of the misconduct and given 30 days detention and 30 days loss of privileges. Weatherspoon has not provided any evidence that Defendant Mastaw took retaliatory action in issuing the misconduct ticket due to any Weatherspoon's prior protected conduct. In the opinion of the undersigned, the Court should dismiss Weatherspoon's retaliation claims.[3]

---

[3] To the extent that Weatherspoon is alleging that a Defendant took retaliatory action against by denying him medical care, it is recommended that those claims be dismissed because the medical record supports the finding that Weatherspoon received appropriate treatment and no evidence is in the record to support a claim that any Defendant denied Weatherspoon medical care in retaliation for past protected conduct.

**Qualified Immunity**

Defendants also seeks summary judgment based on qualified immunity.[4] Government officials, performing discretionary functions, are generally shielded from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-33. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is

---

[4] To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the 11th Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

warranted. The court may consider either approach without regard to sequence. *Id*. Because the undersigned concludes that there is no genuine issue of material fact as to any of Weatherspoon's claims, the undersigned also recommends that the Court rule that Defendants are entitled to qualified immunity.[5]

## Recommendation

The undersigned respectfully recommends that the Court grant Defendants motions for summary judgment (ECF Nos. 76 and 77) and dismiss this case in its entirety.[6]

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 27, 2019           /s/ *Maarten Vermaat*
                                 MAARTEN VERMAAT
                                 U.S. MAGISTRATE JUDGE

---

[5] To extent that Weatherspoon is asserting any claims under the 14th Amendment, it is recommended that those claims be dismissed because Weatherspoon has failed to establish any violation of clearly established 14th Amendment law.

[6] As an alternative argument, Defendant Rogers argues that Weatherspoon failed to exhaust his administrative grievance remedies against her. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007). Review of the grievance documents attached to Defendant Rogers's motion for summary judgment shows that Weatherspoon did not exhaust his claims against Defendant Rogers. (ECF No. 76, PageID.759-844.)